[Cite as *State v. Graham*, 2014-Ohio-3149.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

STATE OF OHIO,                          :          Case No. 13CA11

    Plaintiff-Appellee,              :

v.                                      :          <u>DECISION AND</u>
                                                   <u>JUDGMENT ENTRY</u>
MATTHEW L. GRAHAM IV,                    :

    Defendant-Appellant.             :          **RELEASED:  7/10/2014**

_____

<u>APPEARANCES</u>:

Eric Allen, The Law Office of Eric J. Allen, L.T.D., Columbus, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecuting Attorney, Hillsboro, Ohio, for appellee.

_____

Harsha, J.

{¶1}     After a jury found Matthew Graham IV guilty of possession of heroin, trafficking in heroin, and a forfeiture specification, the trial court merged the drug convictions and sentenced Graham to ten years mandatory incarceration and five years postrelease control on the trafficking conviction.  The trial court also sentenced Graham to 180 days in jail for six counts of direct criminal contempt for his repeated interruptions of the judge during the sentencing hearing.

{¶2}     On appeal, Graham asserts in his first assignment of error that the trial court committed plain error by giving an incorrect recitation of the *Howard* charge to the jury when it was deadlocked.  We reject Graham's claim because the trial court's instruction correctly encouraged a unanimous verdict only when one could conscientiously be reached and called for all jurors and not just the minority members to

reevaluate their opinions.  The trial court did not commit error, much less plain error, in its instructions.

{¶3}    In his second assignment of error, Graham claims that the trial court abused its discretion by finding him in contempt and sentencing him to 180 days in jail. The trial court's finding was neither unreasonable, arbitrary, nor unconscionable because contrary to the orders and admonishments of both the judge and his trial counsel, Graham's repeated interruptions of the trial court during sentencing impeded and obstructed the trial court in the performance of its functions.

{¶4}    In his third assignment of error, Graham asserts that the trial court abused its discretion by sentencing him to a ten-year sentence, which is just short of the maximum prison term authorized by law, on his conviction for trafficking in heroin. Because our standard of review in felony sentencing cases is no longer the abuse-of-discretion standard and Graham concedes that his sentence is not clearly and convincingly contrary to law, this assignment of error has no merit.

{¶5}    Therefore, we overrule Graham's assignments of error and affirm the judgment of the trial court.

## I.  FACTS

{¶6}    Amy Roads contacted the Highland County Sheriff's office to inform it of the drug activities of her live-in boyfriend, Graham.  Roads indicated she did so to get herself cleaned up, straighten her life out, and stop Graham's abuse of her.  Graham sold heroin on a regular basis, travelling with Roads to Dayton at least once or twice a week to purchase heroin to sell in Highland County.

{¶7}   The next day, Graham asked Roads to drive him to Dayton to get some more heroin.  Roads drove a Chevrolet Tahoe that Graham had purchased.  Graham went inside an apartment in Dayton and came back out with a bag of heroin and some cash.  Graham unscrewed the center console in the vehicle and placed the heroin and money underneath it before putting the console back.  During these events, Roads was in contact with the sheriff's office, and she advised it when they had returned to Highland County and stopped at a gas station.

{¶8}   Based on Roads' information the police then stopped the vehicle to recover the drugs that were allegedly in the vehicle.  They removed Roads from the vehicle and a drug-sniffing dog walked around the vehicle until it laid down beside the front passenger door, where Graham was seated.  After the officers removed Graham from the vehicle, they found $375 in cash on him.  The officers then searched the vehicle, and after the dog scratched the console, the officers unscrewed it and located the bag of heroin and $990 that Graham had hidden underneath it; the bag contained 139.5 grams of heroin, which had a street value of $28,000.  In a subsequent search of the apartment that Graham shared with Roads, the officers found weight scales containing a trace amount of heroin and a bottle containing empty capsules, which could be used to put heroin in.

{¶9}   A Highland County grand jury indicted Graham on one count of possession of heroin in violation of R.C. 2925.11(A), a felony of the first degree, one count of trafficking in heroin in violation of R.C. 2925.03(A)(2), a felony of the first degree, and a forfeiture specification under R.C. 2941.14.17.  The trial court appointed an attorney to represent Graham, and he entered a plea of not guilty to the charges.

After a trial the jury returned verdicts finding Graham guilty of heroin possession and trafficking; it also found that the Chevrolet Tahoe and money found on Graham and under the console was subject to forfeiture. The trial court merged the convictions and upon the state's election sentenced Graham on the heroin trafficking offense to ten years incarceration and five years of postrelease control. The trial court also found Graham in direct contempt of court because of his "repeated obstruction of the proceedings due to his repeated interruptions of the Judge during the sentencing hearing"; the court sentenced him to 180 days in jail for that conduct. The court gave Graham credit towards his contempt sentence for the 153 days he previously spent in jail on the drug charges and suspended the balance of 27 days.

## II.  ASSIGNMENTS OF ERROR

{¶10}  On appeal Graham assigns the following errors for our review:

1. THE TRIAL COURT COMMITTED PLAIN ERROR BY GIVING AN INCORRECT RECITATION OF THE SO CALLED HOWARD CHARGE TO THE JURY.

2. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING APPELLANT IN CONTEMPT AND SENTENCING HIM TO ONE HUNDRED AND EIGHTY DAYS IN JAIL.

3. THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO A TEN YEAR SENTENCE.

## III. LAW AND ANALYSIS

### A.  *Howard* Charge

{¶11}  In his first assignment of error Graham argues that the trial court committed plain error by giving the jury an incorrect recitation of the "*Howard* charge."

**{¶12}** After about four hours of deliberations, the jury advised the trial court that it was at an impasse and asked the court what to do because they felt that they could not come to a decision. The trial court responded with the following instruction:

> This is a new and difficult assignment for all of you. The process of discussion and deliberation in the jury room is necessarily slow and requires consideration and patience. The secrecy which surrounds your efforts prevents others, including the Court, from knowing when your efforts will result in a verdict.
>
> In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror, and not mere acquiescence in the conclusion of other jurors, each question submitted to you should be examined with proper regard and deference to the opinions of others.
>
> *It is desirable that this case be decided.* You are selected in the same manner and from the same source as any future jury would be.
>
> There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent, than this one.
>
> Likewise, there's no reason to believe that more clearer (sic) evidence would be produced by either side. It[']s your duty to decide the case if you can conscientiously do so.
>
> You should listen to one another's opinions with a disposition to be persuaded. Do not hesitate to re-examine your views, and change your position if you are convinced it is erroneous.
>
> If there is disagreement, all jurors should re-examine their positions given that a unanimous verdict has not been reached.
>
> Jurors for acquittal should consider whether their doubt is reasonable considering that it is not shared by others equally honest who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath.
>
> Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all others.

(Emphasis added.)

**{¶13}** Graham did not object to the trial court's supplemental instruction.[1] Therefore, as he admits on appeal the appropriate standard of review is whether the trial court's instruction constituted plain error.  *See* Crim.R. 30(A) ("a party may not assign as error the giving or failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection"); *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 145, citing *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), syllabus (when a defendant fails to properly object to a jury instruction, the defendant waives all but plain error on appeal).  "For a court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of trial."  *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 30.  Moreover, "even when the minimum requirements have been met, a reviewing court should still be conservative in its application of plain-error review, reserving notice of plain error for situations involving more than merely theoretical prejudice to substantial rights."  *Id.*  That is, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *see also State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, ¶ 42.

**{¶14}** Graham asserts that the trial court committed error by deviating from the jury-deadlock instruction approved by the Supreme Court of Ohio in *State v. Howard*, 42

---

[1] Nor did he object to the court's prior comment to jury, when they first informed the court of their impasse, that "[I]t is preferable that this case be decided today, so I'm going to ask you to continue deliberations this evening."  Because this comment is not part of the formal instruction that is the basis of the first assignment of error, we do not address it.

Ohio St.3d 18, 537 N.E.2d 188 (1989). "When a jury informs a judge that it is deadlocked, the judge must determine whether to declare a mistrial and dismiss the jury or give a supplementary instruction emphasizing the duty of the jury to make every reasonable effort to agree." Katz, Martin, Lipton, Giannelli, and Crocker, *Baldwin's Ohio Practice Criminal Law*, Section 65:5 (3d Ed.2013). The United States Supreme Court had long ago approved the *Allen* or "dynamite" charge, which advises the jury to continue deliberating and reach a verdict. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

**{¶15}** In *Howard*, the Supreme Court of Ohio rejected the *Allen* charge as being too coercive in that it pressured minority jurors to abandon their positions and to agree with those jurors representing the majority. Instead, the court approved the following supplemental instruction in lieu of the *Allen* charge:

> The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. *You should consider it desirable that the case be decided.* You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves

whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.

(Emphasis added.)

**{¶16}** Graham claims that the trial court erred by not following the *Howard* charge verbatim and instead modifying it slightly.  More specifically, he contends that by instructing the jury that "[i]t is desirable that this case be decided" instead of strictly following the *Howard* language that "[y]ou should consider it desirable that the case be decided," prejudicial error occurred.

**{¶17}** This court has previously acknowledged that the better practice is to give the precise *Howard* instruction as approved by the Supreme Court of Ohio, but recognized that the approved instruction is ultimately a suggestion rather than an absolute mandate.  *See State v. Nutt*, 4th Dist. Ross No. 06CA2926, 2007-Ohio-3031, ¶ 12, and cases cited therein.  "If a court deviates from the *Howard* language, the court must ensure that the charge satisfies the concerns of the *Howard* opinion * * * that the instruction (1) encourages a unanimous verdict only when one can conscientiously be reached, leaving open the possibility of a hung jury and resulting mistrial; and (2) calls for all jurors to reevaluate their opinions, not just minority members."  *Id.*; *see also State v. Clifton*, 172 Ohio App.3d 86, 2007-Ohio-3392, 872 N.E.2d 1310 (4th Dist.), ¶ 31.

**{¶18}** Courts have uniformly held that supplemental jury instructions that use the language challenged here that "[i]t is desirable that this case be decided" rather than using the verbatim *Howard* language that "[y]ou should consider it desirable that the case be decided" are not erroneous and substantially comply with *Howard*.  *See generally State v. Dickens*, 1st Dist. Hamilton No. C-960365, 1998 WL 226537, *2 (May 8, 1998) ("We do not believe that this slight variation in language constitutes reversible

error"); *State v. Parker*, 6th Dist. Lucas No. L-99-1008, 1999 WL 769563, *3 (Sept. 30, 1999); *State v. Howard*, 2d Dist. Montgomery No. 23795, 2011-Ohio-27, ¶ 69, 82 (holding that a supplemental jury instruction that included the sentence that "[i]t is desirable that the case be decided" sufficiently tracked the language approved by the Supreme Court of Ohio in *Howard* and Section 429.09 of the Ohio Jury Instructions so as not to constitute error).

{¶19} Although Graham argues that this district has not approved a similar variation in language for a *Howard* charge, the state correctly cites *State v. Mulhern*, 4th Dist. Vinton No. 02CA565, 2002-Ohio-5982, ¶ 32 and 39, in which we held that a supplemental trial court charge that included the comparable sentence "[i]t is desirable, it is important that the case be decided" complied with *Howard*.

{¶20} After a thorough review of the trial court's supplemental jury instruction here, we conclude that the charge complied with *Howard* because the court stressed that a unanimous verdict should be reached, but only if the jurors could conscientiously do so, and that both the jurors voting for acquittal and those voting for conviction should reexamine their respective positions. *Id.* at ¶ 39.

{¶21} Therefore, Graham has not established error, much less plain error, in the trial court's supplemental jury instruction. We overrule his first assignment of error.

## B. Contempt

{¶22} In his second assignment of error, Graham asserts that the trial court abused its discretion in finding him in contempt of court. Graham had previously been convicted three times of felonies, including possession of heroin and possession of cocaine. Notwithstanding his prior convictions, Graham informed the trial court at a

pretrial hearing that he had not been previously convicted of any crime.  When he was cross-examined at his jury trial, Graham repeatedly lied under oath that he had not been convicted of a felony in the past ten years until he finally conceded that he had been convicted of a felony in that period.

{¶23}  After the jury returned verdicts finding Graham guilty of the charged crimes and the forfeiture specification, the trial court conducted a sentencing hearing at which the following pertinent exchange occurred between the judge, Graham, and Graham's trial counsel after Graham again lied about his prior felony convictions:

> THE COURT:  Well, Mr. Graham, first of all, I'll note that the record does show that this is your fourth strike.  And it's amazing to me that you just stood there and lied to me again.  You didn't lie to me the first time today, you lied to the jury….
>
> DEFENDANT GRAHAM:  No, I did not ….
>
> THE COURT:  You shut up!  I am not gonna put up with ….
>
> DEFENDANT GRAHAM:  I didn't lie!
>
> MR. WAGONER:  Shhhh!
>
> THE COURT:  You're going to be quiet or I'll have you….
>
> MR. WAGONER:  Sit down and ….
>
> DEFENDANT GRAHAM:  …I'm not gonna sit down and….
>
> MR. WAGONER:  ….come on, man….
>
> THE COURT:  Sit down.
>
> DEFENDANT GRAHAM:  …I'm not gonna sit down when … (remainder of two or three words not understood)
>
> THE COURT:  All right, now, I'm talking and you be quiet.
>
> DEFENDANT GRAHAM:  It's ….(remainder of three or four words not understood)

THE COURT:  I can have you gagged if that's what you would like.

DEFENDANT GRAHAM:  Whatsyagonna do?  Give me eleven years? Whatsyagonna do?

THE COURT:  Well, you're not helping yourself any.

DEFENDANT GRAHAM:  It's not gonna do anything about anything man. You're not sayin' nothin'.

THE COURT:  Now, as I was saying, uh, the records show that the evidence showed that you've been convicted of three felonies.  You've denied that in the court today in front of the jury; and then you denied the one again.  You've been convicted, according to the…

DEFENDANT GRAHAM:  I didn't deny 'em….

MR. WAGONER:  Just ….

THE COURT:  Mr. Graham, one thing that you should ….

DEFENDANT GRAHAM:  I didn't say ….

MR. WAGONER:  Shhhh!  Just have a seat.

THE COURT:  ….remember….

MR. WAGONER:  Just have a seat.

DEFENDANT GRAHAM:  Okay, why is he keep …

MR. WAGONER:  Just relax.

DEFENDANT GRAHAM:  Why does he keep ramming that down my throat ….

MR. WAGONER:  Relax!

DEFENDANT GRAHAM:  ….saying I lied about it…

MR. WAGONER:  Relax.  Stop.  Just have a seat, please!

DEFENDANT GRAHAM:  Then why is he saying all that….

MR. WAGONER:  Don't say anything!

DEFENDANT GRAHAM:  Well, man, I ….(rest of sentence not understood)

THE COURT:  One more word and …

DEFENDANT GRAHAM:  I didn't ….

MR.WAGONER:  Shhhh!

THE COURT:  All right.  One more word and you're gonna be held in contempt.

DEFENDANT GRAHAM:  I didn't ….

THE COURT:  You're in contempt.  I sentence you to sixty days direct…

DEFENDANT GRAHAM:  You got to do what you've got to do.

THE COURT:  That's another thirty.  That's ninety…

DEFENDANT GRAHAM:  ….I've got a ….(remaining two or three words not understood)….

THE COURT:  That's a hundred twenty.

DEFENDANT GRAHAM:  I've got ….(remaining two or three words again not understood)

THE COURT:  A hundred fifty.

DEFENDANT GRAHAM: ….Defendant made statements totally not understood.

THE COURT:  How many you gonna go for, 180?

DEFENDANT GRAHAM:  ….(Defendant still talking, but his comments were not understood)

THE COURT:  All right, one hundred eighty days (180) days contempt.  The time you have served in jail will be applied to that.

DEFENDANT GRAHAM:  ….(Something sounded like 'I know that', or words not distinguishable)

THE COURT:  That means you won't get any jail time credit for the time you've been in jail.  Now, the next time you talk, it will be another thirty.

DEFENDANT GRAHAM:  Go ahead.  He ain't gonna go for that.

MR. WAGONER:  Please be quiet!

**{¶24}** Because appellate review of a contempt order is under the highly deferential abuse-of-discretion standard, we will not lightly substitute our interpretation for that of the issuing court.  *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29.  A trial court abuses its discretion when it is unreasonable, arbitrary, or unconscionable.  *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 19.

**{¶25}** Contempt is "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions."  *Windham Bank v. Tomasczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus.  Contempt proceedings are classified as civil or criminal based on the purpose to be served by the sanction.  *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554-555, 740 N.E.2d 265 (2001).  "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order[;] [c]riminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court."  *Id.* at 555.  Contempt may also be direct or indirect, with direct contempt occurring " 'in the presence of or so near the court as to obstruct the administration of justice.' "  *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693, fn. 1 (1992), quoting R.C. 2725.01.

**{¶26}** The trial court found that Graham's repeated interruptions of the court during sentencing obstructed the proceedings and constituted a direct criminal contempt

of court.  Graham assails this finding as an abuse of discretion.  " 'Because of the summary nature of a direct contempt conviction, the court must be careful to guard against confusing actions or words which are contemptuous to the judge's personal feelings or sensibilities and actions or words which constitute punishable, criminal contempt of a summary nature because of posing an actual and imminent threat to the administration of justice.' " *State v. McDew*, 5th Dist. Stark No. 2010CA0270, 2011-Ohio-1196, ¶ 7, quoting *State v. Conliff*, 61 Ohio App.2d 185, 189, 401 N.E.2d 469 (10th Dist.1978).  Nevertheless, "by its very nature, direct contempt of court is a very subjective determination," which "is never adequately portrayed by the written transcript."  *McDew* at ¶ 31.  "Because of its subjective nature and the fact that the actual dynamics of the situation are best viewed by the trial court, it is difficult to second-guess the trial court."  *Id.*

**{¶27}**  The trial court did not act in an unreasonable, arbitrary, or unconscionable manner in finding Graham guilty of direct criminal contempt.  Graham argues that "[h]ad the court not opined that [he] was a liar," the exchange that the trial court referenced in its contempt finding would not have occurred.  Graham does not suggest on appeal that the trial court erred in referring to him as a liar.  After repeatedly misrepresenting to the court and—under oath—to the jury that he had not been previously convicted of a felony, the trial court accurately characterized him a liar.  At that point, Graham was told repeatedly by both the trial court as well as his own counsel to sit down and be quiet, but he kept continually interrupting the trial court while it was addressing him during sentencing, even when the judge warned him about the increasing sanctions for his

contemptuous conduct, which did not deter Graham from continuing to interrupt the judge.

{¶28} Graham's reliance on *State v. Persons*, 4th Dist. Meigs No. 94CA26, 1996 WL 384590 (July 11, 1996), is misplaced. In that case, we reversed a trial court contempt finding in which the court cited a prior court ruling that was not journalized or referred to in the transcript as the basis for the finding of contempt; moreover, the "outburst" by the defendant was an innocuous, solitary statement at a pretrial hearing. Conversely, the situation here indicates repeated contemptuous behavior by Graham in interrupting the trial court judge despite repeated warnings by the judge and his trial counsel.

{¶29} Under these circumstances, the trial court did not err in finding Graham in direct criminal contempt of court. His continued interruptions of the trial judge impeded and obstructed the judge from proceeding with his sentencing. A contrary ruling would permit parties to lie under oath, interrupt the trial court when the party is caught lying, and ignore repeated warnings from the court and even the party's counsel to be quiet without repercussion. We overrule Graham's second assignment of error.

C.  Sentence for Trafficking in Heroin

{¶30} In his third assignment of error, Graham contends that the trial court abused its discretion in sentencing him to a ten-year sentence. Graham claims that the trial court abused its discretion in sentencing to nearly the maximum 11-year term because the sole justification was his lack of remorse and "it is obvious that the court was using this perceived contemptuous behavior in sentencing."

**{¶31}** In *State v. Brewer*, 4th Dist. Meigs No. 14CA1, 2014-Ohio-1903, ¶ 33, we recently held that when reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). *Id.* ("we join the growing number of appellate districts that have abandoned the *Kalish* plurality's second-step abuse-of-discretion standard of review; when the General Assembly reenacted R.C. 2953.08(G)(2), it expressly stated '[t]he appellate court's standard of review is not whether the sentencing court abused its discretion"). R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law."

**{¶32}** Applying this standard of review, Graham's ten-year sentence, as he concedes, is not clearly and convincingly contrary to law because it is within the allowable range under the Revised Code. *See* R.C. 2919.14(A)(1) ("For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years").

**{¶33}** Because Graham's argument under his assignment of error is restricted to contending that the trial court abused its discretion in imposing a ten-year sentence and that standard is no longer applicable, his argument fails.

**{¶34}** Moreover, even assuming that the abuse-of-discretion standard remains viable, his argument would still fail. Graham's lack of remorse is not—as he claims on appeal—the "only justification for this lengthy sentence." During sentencing, the trial court noted that "[t]here has been a very disturbing pattern of defendant[s] coming from

the Dayton area, Dayton and Trotwood, bringing heroin[] into this community; and the results are devastating to the community" and that "in view of the previous record, and of [Graham's] conduct on the witness stand, as well as here, which flies in the face of the evidence, * * * the Court finds it is necessary to protect the public from [Graham], a drug dealer, by taking [him] out of the community for a significant length of time." Highland County Sheriff's Detective Randy Sanders, who had 33 years of law enforcement experience, including a primary emphasis in investigating drug cases, testified that he had seen the amount of heroin seized in Graham's case only a couple times—when they stopped drug dealers coming from the city into Highland County.  The trial court did not act in an unreasonable, arbitrary, or unconscionable manner in sentencing him to near the maximum term for trafficking in heroin.  We overrule Graham's third assignment of error.

## IV.  CONCLUSION

{¶35}  Therefore, having overruled Graham's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.:  Concurs in Judgment and Opinion.
McFarland, J.:  Dissents.

For the Court

BY:  _____
       William H. Harsha, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**